UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

Chambers of
**GEORGE L. RUSSELL, III**
United States District Judge

101 West Lombard Street
Baltimore, Maryland 21201
410-962-4055

October 17, 2016

MEMORANDUM TO COUNSEL RE:            Miguel Santos v. Deputy David Crowell
                                                                 Civil Action No. GLR-15-3907

Dear Counsel:

Pending before the Court is Defendant Deputy David Crowell's ("Deputy Crowell") Motion to Quash Subpoena and for Protective Order (ECF No. 23). Also pending are Plaintiff Miguel Santos's Motion for Leave to Amend (ECF No. 26) and Petition to Hold Sheriff Michael A. Lewis ("Sheriff Lewis") in Contempt of Court (ECF No. 27). The Motions and Petition are fully briefed and ripe for disposition. No hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons that follow, the Court will deny the Motions and defer ruling on Santos's Petition until the Court determines whether Santos will withdraw it.

The Court outlined the alleged facts underlying this case in its March 17, 2016 Order and will not repeat them here. (See ECF No. 14). In his original Complaint, Santos sued only Deputy Crowell and raised three claims: (1) a 42 U.S.C. § 1983 (2012) claim for violations of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution based on unreasonable seizure,[1] excessive use of force, and denial of due process (Count I); (2) a claim under Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658 (1978) ("Monell claim") (Count II);[2] and (3) a common law assault claim (Count III). (Compl., ECF No. 1). Santos prayed for compensatory and punitive damages. (Id. ¶ 19). In its March 17, 2016 Order, the Court dismissed Count I as to Deputy Crowell in his official capacity and Count II in its entirety. (ECF No. 14). In dismissing Count II, the Court explained that a local governmental unit, not Deputy Crowell, is the appropriate defendant for a Monell claim. (Id.).

On June 20, 2016, Santos filed his Motion for Leave to Amend his Complaint, to which he attached his proposed First Amended Complaint in accordance with Local Rule 103.6(a) (D.Md. 2016). (ECF Nos. 26, 26-1). On June 15, 2016, Santos served Deputy Crowell with a subpoena commanding Sheriff Lewis, who is not a party to this action, to testify at a deposition scheduled for July 19, 2016. (ECF Nos. 23-1, 23-3). On June 20, 2016, Deputy Crowell moved to quash the subpoena or for a protective order. (ECF No. 23). After Sheriff Lewis did not appear at the July 19, 2016 deposition, Santos petitioned to hold Sheriff Lewis in contempt of Court. (ECF No. 27).

---

[1] On October 5, 2016, the Court approved the parties' consent dismissal with prejudice of the portion of Count I asserting unreasonable seizure. (ECF No. 39).

[2] Under 42 U.S.C. § 1983, local government entities, like counties, can be sued for violations of constitutional rights. See Monell, 436 U.S. at 690. The violation, however, must bear some relation to the county's "policy or custom." Id. at 690–91.

**Motion for Leave to Amend**

Rule 15(a)(1) provides that a party may amend its pleading once as a matter of course within twenty-one days after service of a motion under Rule 12(b).  Because Santos filed his proposed Second Amended Complaint after this deadline, Rule 15(a)(2) applies.

Under Rule 15(a)(2), "[t]he court should freely give leave [to amend a complaint] when justice so requires."  Justice does not require granting leave to amend when the moving party has exhibited bad faith, or amendment would prejudice the nonmoving party or be futile.  See Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos, 264 F.3d 424, 446 (4th Cir. 2001) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999)).  Leave to amend would be futile when an amended complaint could not survive a motion to dismiss for failure to state a claim.  See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008).  The Court should only deny leave to amend on the ground of futility, however, when the proposed amendment is clearly insufficient on its face.  Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986) (citing Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980)).

In his First Amended Complaint, Santos seeks to correct and bolster his Monell claim.  First, he attempts to assert his Monell claim against Wicomico County, Maryland ("Wicomico County")—a new Defendant.  (First Am. Compl., ECF No. 26-1).  Second, he seeks to include numerous new allegations regarding Sheriff Lewis's and the Wicomico County Sheriff's Office's ("WCSO") purported policies and customs of encouraging racial profiling and excessive use of force.  (Id.).

Deputy Crowell argues amendment would be futile because sheriffs and their deputies are state officials and Wicomico County cannot be liable under Monell for the policies and customs of state officials.  To be sure, under Maryland law, sheriffs and their deputies are state officials.  See Rucker v. Harford Cty., 558 A.2d 399, 402 (Md. 1989).  But, Deputy Crowell overlooks that whether Sheriff Lewis is a state official does not end the inquiry of whether Wicomico County can be liable under Monell.  See Fether v. Frederick Cty., No. CCB 12-1674, 2013 WL 1314190, at *7 (D.Md. Mar. 29, 2013) (explaining that although "sheriffs are state rather than local government employees . . . this does not end the inquiry for . . . Frederick County").

A county may be liable under Monell for the allegedly unconstitutional policies and customs of the sheriff of the county if the sheriff had final policymaking authority for the county when devising and implementing the policies and customs.  See City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988) ("[O]nly those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability."); see also Dotson v. Chester, 937 F.2d 920, 924 (4th Cir. 1991) ("County liability for the Sheriff's operation of the County Jail depends on whether the Sheriff had final policymaking authority for the County over the County Jail.").  A county may also be liable under Monell if it "officially sanctioned or ordered" the policies and customs.  Praprotnik, 485 U.S. at 123.

The amended Monell claim that Santos proposes is clearly insufficient on its face for at least two reasons.  First, Santos alleges "Wicomico County, through its Sheriff's Department, has repeatedly adopted and used policies, procedures, practices, and customs . . . that [have] allowed racial and ethnic profiling, excessive force, and grossly disproportionate force to 'send a message' or further some political agenda or motive of the [WCSO]."  (First Am. Compl. ¶ 21) (emphasis added).  By alleging Wicomico County has adopted unconstitutional policies and customs "through" the WCSO, it appears Santos seeks to hold

Wicomico County vicariously liable for the acts of the WCSO.  A county, however, "cannot be held liable under § 1983 on a respondeat superior theory."  Monell, 436 U.S. at 691.  Second, Santos provides specific examples of purportedly unconstitutional policies and customs, but he attributes them only to Sheriff Lewis and the WCSO—not Wicomico County.[3]  Santos neither alleges that Wicomico County sanctioned or ordered the policies and customs, nor alleges that Sheriff Lewis or the WCSO had final policymaking authority for Wicomico County when devising and implementing them.  See Praprotnik, 485 U.S. at 123.

Because the amended Monell claim Santos proposes is clearly insufficient on its face, the Court concludes amendment would be futile.  See Johnson, 785 F.2d at 510.  Accordingly, the Court will deny Santos's Motion for Leave to Amend without prejudice.

## Motion to Quash Subpoena or for Protective Order

Deputy Crowell argues the Court should quash Santos's subpoena because Sheriff Lewis does not possess any potentially relevant information regarding the physical altercation between Santos and Deputy Crowell (the "Altercation"), and ordering Sheriff Lewis to be deposed would subject him to an undue burden.  Santos responds that after the Altercation, Sheriff Lewis made several comments to local media that demonstrate he is familiar with the facts and circumstances surrounding the Altercation.  Santos maintains that Sheriff Lewis "applauded" Deputy Crowell's efforts in "restrain[ing] himself" because lethal force "would have been completely justified" and Santos "would have been a lot more banged up" if Sheriff Lewis had arrested him.  (Pl.'s Opp'n Mot. Quash Subpoena at 1, 2, ECF No. 24).  Santos contends Sheriff Lewis must have made these statements "based upon some specific, factual predicate, whether it is an account of the incident by Defendant Crowell, a review of video surveillance of the incident, or some other unknown factor(s)."  (Id. at 2).

After initially asserting that Sheriff Lewis has discoverable information relevant to a potential qualified immunity defense for Deputy Crowell, (see ECF No. 23-9), Santos now asserts Sheriff Lewis has discoverable information relevant to Santos's claim for punitive damages, (Pl.'s Opp'n Mot. Quash Subpoena at 2).  Santos also maintains that if Sheriff Lewis's comments were not based on his personal knowledge of the facts underlying the Altercation, but rather on the policies and customs of the WCSO, they are relevant to a Monell claim.

---

[3] Santos presents six examples of purportedly unconstitutional policies and customs.  First, the WCSO encourages, teaches, and condones profiling based on race and national origin, and Sheriff Lewis uses race as a factor in his decisions to detain motorists.  (First Am. Compl. ¶ 22).  Second, Sheriff Lewis and the WCSO implement and encourage a policy of using lethal and grossly excessive force against unarmed, nonviolent individuals.  (Id. ¶ 23).  Third, the WCSO maintains a custom of encouraging the use of excessive force by publicly applauding such instances of force.  (Id. ¶ 24).  Fourth, the WCSO promotes a policy of "militaristic, vigilante-style law enforcement" in which deputy sheriffs intentionally use "excessive and gratuitous force to 'send a message'" to other potential offenders.  (Id. ¶ 25).  Fifth, Sheriff Lewis perpetuated a policy of using excessive force when he stated Santos would have been injured more severely if Sheriff Lewis were in Deputy Crowell's shoes during the altercation.  (Id. ¶ 26).  Sixth, Sheriff Lewis has a custom of publically referring to the President of the United States as "Barrack Hussein Obama" and blaming the President for attacks against law enforcement officers.  (Id. ¶ 27).  Santos alleges that Sheriff Lewis maintains this custom for the purpose of promoting racial, ethnic, and religious biases among his deputy sheriffs.  (Id.).

3

As a general matter, "[c]ourts are extremely hesitant to prohibit the taking of a discovery deposition and most requests of this nature are denied." UAI Tech., Inc. v. Valutech, Inc., 122 F.R.D. 188, 191 (M.D.N.C. 1988); see Baron Fin. Corp. v. Natanzon, 240 F.R.D. 200, 202 (D.Md. 2006) (stating that courts deny the majority of requests to stay depositions); see also id. ("[A]n 'order to vacate a notice of taking a deposition is generally regarded by the courts as both unusual and unfavored[.]'" (citation omitted)). Having made that initial observation, the Court reviews the specific Rules governing motions to quash or for a protective order.

Rule 45 permits a court to quash or modify a subpoena. See Fed.R.Civ.P. 45(d)(3)(A). In determining whether to exercise its authority under Rule 45, the court "must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." Innovative Therapies, Inc. v. Meents, 302 F.R.D. 364, 377 (D.Md. 2014) (quoting Fed.R.Civ.P. 26 advisory committee's note).

Rule 26(c) governs protective orders and "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Id. (citation omitted); see Fed.R.Civ.P. 26(c)(1). Rule 26(c) imposes a high burden on movants: they must show "good cause" by "set[ting] forth specific and particular facts, rather than broad conclusory statements as to why a protective order should issue." Meents, 302 F.R.D. at 377 (citing Natanzon, 240 F.R.D. at 202). In determining whether there is good cause, "the court must balance the 'interest of a party in obtaining the information versus the interest of his opponent in keeping the information confidential or in not requiring its production.'" Fid. & Guar. Life Ins. Co. v. United Advisory Grp., Inc., No. JFM-13-40, 2016 WL 632025, at *4 (D.Md. Feb. 17, 2016) (quoting UAI Tech, 122 F.R.D. at 191).

Rules 26 and 45 provide that a court may quash a subpoena or issue a protective order in response to a subpoena if the individual or entity from whom discoverable information is sought would suffer an "undue burden." Fed.R.Civ.P. 26(c)(1), 45(d)(3)(A)(iv). There is an undue burden when a subpoena "seeks information irrelevant to the case." Singletary v. Sterling Transp. Co., 289 F.R.D. 237, 241 (E.D.Va. 2012) (quoting Cook v. Howard, 484 F.App'x 805, 812 n.7 (4th Cir. 2012) (per curiam)). This is because "the scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26." Id. at 240–41; see Malibu Media, LLC v. Doe, No. WDQ-14-0252, 2014 WL 2879326, at *2 (D.Md. June 23, 2014) ("Although Rule 45 does not include . . . irrelevance as reason[] to quash a subpoena, the grounds in Rule 45 are coextensive with the general rules governing discovery under Rule 26."). And, Rule 26 provides that discovery must be "relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). Thus, the Court will review Santos's subpoena under the relevancy standard in Rule 26(b)(1).

Under Rule 26(b)(1), relevance, rather than admissibility, governs whether information is discoverable. See Fed.R.Civ.P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."); Herchenroeder v. Johns Hopkins Univ. Applied Physics Lab, 171 F.R.D. 179, 181 (D.Md. 1997). Normally, evidence is relevant if it has the tendency to make the existence of any fact consequential to the determination of the action more probable or less probable. Fed.R.Evid. 401. In the context of discovery, however, courts construe relevancy more broadly. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Relevant information encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Id.; Carr v. Double T Diner, 272 F.R.D. 431, 433 (D.Md. 2010). Indeed, for discovery purposes, the general subject

matter of the litigation, rather than the pleadings or merits of the case, govern the scope of relevant information.  Kidwiler v. Progressive Paloverde Ins. Co., 192 F.R.D. 193, 199 (N.D.W.Va. 2000).

Santos contends a deposition of Sheriff Lewis will produce information relevant to punitive damages[4] and a Monell claim.   Although Santos does not identify specific lines of questioning, the Court surmises from Santos's Opposition to the Motion to Quash that Santos would question Sheriff Lewis about his knowledge of the Altercation based on evidence he reviewed, such as surveillance footage, or any communications he had with Deputy Crowell.  The Court also infers Santos would ask Sheriff Lewis about the WCSO's policies and customs regarding interactions with minorities and the degree of force used in particular scenarios.

The Court finds the potential responses to these questions are, for discovery purposes, relevant to general subject matter of this litigation, including punitive damages and a Monell claim.  Any information Deputy Crowell shared with Sheriff Lewis following the Altercation could be germane to whether Deputy Crowell exhibited actual malice by intending to injure Santos.  Also, although the Court will deny Santos's Motion for Leave to Amend his Monell claim, the Court will do so without prejudice, thereby affording Santos one last opportunity to correct his Monell claim.  See Ostrzenski v. Seigel, 177 F.3d 245, 252–53 (4th Cir. 1999) (explaining that to satisfy the federal policy of resolving cases on the merits, courts give a plaintiff "every opportunity to cure formal defects in his pleading").  Testimony from Sheriff Lewis regarding the policies and customs of the WCSO would certainly be relevant to a Monell claim that is sufficiently pled. Furthermore, the Court concludes Deputy Crowell does not carry his heavy burden of showing good cause because he points to no "specific and particular facts" warranting a protective order.  See Meents, 302 F.R.D. at 377.  Accordingly, the Court will deny Deputy Crowell's Motion to Quash Subpoena and for Protective Order.

For the reasons stated above, the Court will DENY Santos's Motion for Leave to Amend (ECF No. 26) WITHOUT PREJUDICE and DENY Deputy Crowell's Motion to Quash Subpoena and for Protective Order (ECF No. 23).  The parties are ORDERED to conduct a deposition of Sheriff Lewis within thirty days of the date of this memorandum.  At this time, the Court will defer ruling on Santos's Petition to Hold Sheriff Lewis in Contempt (ECF No. 27).  Within seven days of the date of this memorandum, Santos shall advise the Court whether he will continue to pursue a contempt order against Sheriff Lewis, or whether he will withdraw his Petition.  Despite the informal nature of this memorandum, it shall constitute an Order of this Court and the Clerk is directed to docket it accordingly.

Very truly yours,

/s/

_____
George L. Russell, III
United States District Judge

---

[4] In Maryland, to prove entitlement to punitive damages, a plaintiff must show that the tortfeasor acted with actual malice, meaning the "defendant's conduct was characterized by evil motive, intent to injure, ill will, or fraud."  Owens-Illinois, Inc. v. Zenobia, 601 A.2d 633, 652 (Md. 1992).